# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD OLIVERI, JR.,** | : | No. 3:09cv921 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **U.S. FOOD SERVICE d/b/a** | : | |
| **NORTH STAR FOODSERVICE,** | : | |
| **Defendant** | : | |

## **MEMORANDUM**

Before the court for disposition is a motion (Doc. 9) to dismiss Plaintiff Ronald Oliveri's complaint filed by Defendant U.S. Food Service d/b/a North Star Food Service. The matter has been fully briefed and is ripe for disposition.

**Background**

Defendant U.S. Food Service d/b/a North Star Foodservice, a commercial motor carrier, employed the plaintiff at its Pittston, Pennsylvania location beginning on January 15, 2007. (Doc. 1, Compl. ¶ 6). He reported directly to the company's Transportation Manager Pat Sporing ("Sporing"). (Id. at ¶ 8). Over the course of his employment plaintiff's employment relationships forced him to confront incidents of illegal drug use by his co-workers. (Id. at ¶¶ 11, 18).

Because the defendant is a commercial motor carrier, it is regulated by the Federal Department of Transportation (hereinafter "DOT"). (Id. at ¶ 19). The Federal Motor Carrier Safety Administration (hereinafter "FMCSA"), a part of DOT enforce federal safety regulations applicable to commercial motor carriers. (Id.)

Pursuant to DOT regulations, commercial motor carriers must perform drug testing of drivers with commercial drivers licenses– including random drug testing. (Id. at ¶ 20). Employers such as defendant are responsible for

carrying out these random tests. (Id. at ¶ 21). If a driver tests positive for drugs, he must be removed from safety-sensitive duty such as driving. (Id. at ¶ 22). The regulations further provide that the driver may not return to driving until he is evaluated by a substance abuse professional and successfully completes a drug counseling program. (Id. at ¶ 23). Additional DOT regulations require that motor carriers systematically inspect, repair and maintain all commercial motor vehicles under their control. (Id. at ¶ 24). Defendant outsourced certain functions with regard to random drug testing responsibilities to a third-party administrator, First Advantage. (Id. at ¶ 25). First Advantage selected drivers at random for testing and provided a list to the defendant. (Id. at ¶ 26). Sporing required that plaintiff seek prior approval from him before any testing occurred. (Id. at ¶ 29). Sporing delayed or excused testing on several drivers. (Id. at ¶¶ 31-33, 36-38, 48, 52). Additionally, when one driver's test returned positive for cocaine, Sporing indicated that he believed the results were inaccurate and that the driver should be re-tested at a later date. He indicated that he would allow him to return to driving if the second test came back negative, in violation of DOT regulations. (Id. at ¶¶ 41-43).

Plaintiff complained several times to John Reedy, the defendant's area Human Resources Manager about Sporing's failure to comply with DOT drug testing regulations. (Id. at ¶¶ 34-45). Ultimately, Reedy told plaintiff that Sporing was "the Operations Manager, he knows what needs to be done" and "[t]his is [Sporing's] operation, let him run it." (Id. at ¶ 47).

Plaintiff also complained to Sporing and Reedy about the safety of defendant's vehicles. (Id. at ¶ 59). He asserted that the vehicles were not roadworthy and the equipment needed immediate inspection. (Id. at ¶¶ 59,

2

67).

On October 14, 2008, plaintiff contacted the defendant's "Check-In Line" an anonymous hotline for employees to make complaints. (Id. at ¶¶ 71, 77). Plaintiff complained of the drug testing situation.

The next day, Sporing indicated to plaintiff that he knew plaintiff had complained to the hotline and terminated his employment. (Id. at ¶¶ 79, 82). As a reason for his termination the defendant indicated that plaintiff had engaged in "gross misconduct" and violated company policy. (Id. at ¶¶ 87-89). Plaintiff avers that the actual reason for his termination is that he complained about the company's safety practices and refused to violate DOT safety regulations. (Id. at ¶ 90).

Based upon these facts, plaintiff filed the instant two-count action. The complaint alleges: 1) wrongful discharge/retaliation in violation of the Surface Transportation Assistance Act, 49 U.S.C. § 31105 et seq.; and 2) wrongful discharge in violation of public policy under Pennsylvania law. Defendant has filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to a federal statute, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

**Standard of review**

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-

pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

**Discussion**

The defendant moves to dismiss both the wrongful discharge claim based upon the Surface Transportation Assistance Act (hereinafter "STAA") and the wrongful discharge claim based upon public policy. We will address each in turn.

**I. STAA**

Count one of plaintiff's complaint asserts a cause of action for violation of STAA. Under STAA, an employer may not discharge or discriminate against an "employee" regarding pay, terms or privileges of employment because the "employee" engaged in certain protected activities – such as complaining about violations of safety regulations. 49 U.S.C. § 31105(a)(1)(A).

STAA defines "employee" as "a driver of a commercial motor vehicle (including an independent contractor when personally operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who directly affects commercial motor vehicle safety in the course of employment by a commercial motor carrier." 49 U.S.C. § 31101(2).

Defendant argues that plaintiff has not alleged any facts that support the assertion that he is an "employee" within the meaning of STAA. Plaintiff, on the other hand, asserts that he has alleged sufficient facts to fall within the statute's definition of "employee." After a careful review, we agree with the plaintiff.

As set forth above, an employee under the STAA may be one whose job directly affects commercial vehicle safety in the course of employment by a "commercial motor carrier." Defendant argues that this definition applies only to drivers, helpers, loaders (freight handlers), and mechanics. Plaintiff

5

served as a manager of transportation and reported to the operations manager. He supervised driver managers and fleet managers. He was not authorized or called on to determine whether vehicles were unsafe for the road. These responsibilities did not directly affect safety on the highways according to the defendant.

Pursuant to the plain language of the STAA, we must examine the complaint to determine if it alleges facts that indicate that plaintiff held a position that affected commercial motor vehicle safety, instead of merely examining plaintiff's job title. The complaint asserts that plaintiff: (1) served as the management employee responsible for the transportation department (Doc. 1, Compl. ¶¶ 7, 16); (2) made speeches regarding reducing hours of service violations (Id. at ¶ 17); (3) implemented random drug testing (Id. at ¶¶ 28-29, 49); (4) emphasized the importance of pre- and post-trip vehicle inspections during safety meetings with the drivers who reported to him (Id. at ¶ 54); and (5) advised the operations manager on assignment of drivers to new customers in order to safely handle the workload (Id. at ¶ 74).

It appears therefore that plaintiff's work did directly affect motor vehicle safety and dismissal of the case is inappropriate.[1] In support of its position, the defendant relies primarily on an unpublished opinion from the Eleventh Circuit Court of Appeals, Luckie v. Administrative Review Bd., 321 Fed. Appx. 889 (11th Cir. 2009). In Luckie, the court found that the plaintiff was

---

[1] In support of its position defendant cites to two cases United States Supreme Court case from 1947, Levinson v. Spector Motor Svc., 330 U.S. 649 (1947) and Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695 (1947). Both of these case deal with the Fair Labor Standards Act and the Motor Carrier Act not STAA. Besides not involving the statute at issue, which provides its own definition of "employee", the facts of these cases are inapposite to the instant case.

not an "employee" under STAA because his job did not affect commercial vehicle safety. His job duties affected worker safety at the employer's facility, not safety on the highways. Id. at 892. The instant case is different because the tasks that plaintiff performed, such as random drug testing, clearly have an effect on commercial vehicle safety on the highways. Accordingly, the defendant's motion to dismiss the wrongful discharge claim based upon STAA will be denied.

## II. Public Policy

The second count of plaintiff's complaint asserts a cause of action for wrongful discharge based upon a violation of Pennsylvania public policy. Plaintiff avers that Pennsylvania public policy protects the interest in the safety of its citizens on public highways. To be terminated from employment in retaliation for refusing to violate commercial driver safety regulations violates this policy. Defendant moves to dismiss this count.

Generally, employment in Pennsylvania is considered "at will" and absent a contract to the contrary an employee can be terminated for "good reason, bad reason, or no reason at all." Nix v. Temple Univ., 596 A.2d 1132, 1135 (Pa. Super. Ct. 1991). An exception to this general rule exists where an employee's termination violates Pennsylvania public policy. Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009) ( "An employee may bring a cause of action for a termination of [the at-will employment] relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy.") The Pennsylvania legislature formulates its public policies and the court can declare that an action is a violation of public policy "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual

unanimity of opinion in regard to it." Id. (internal quotation marks and citation omitted).

Defendant argues that plaintiff has not alleged a valid claim that his discharge violated a Pennsylvania public policy. Plaintiff argues that if defendant terminated him because of his complaints about the safety of drivers and tractor trailers, which are daily sent out on Pennsylvania's roads, then Pennsylvania's public policy of safety is violated. After a careful review, we agree with plaintiff.

Pennsylvania courts have recognized that highway safety and the regulation of commercial motor vehicles are significant matters of public policy. See Commonwealth v. Pollock, 606 A.2d 503-04 (Pa. Super. Ct. 1992) (The court recognized the legislative intent behind Pennsylvania Department of Transportation's regulatory authority is, *inter alia*, to protect safety of the public on the highways). Additionally, as pointed out by the plaintiff, the Pennsylvania legislature has adopted by reference federal regulations involving the safety issues involved in the instant case, driver drug and alcohol testing and inspection repair and maintenance of commercial motor carriers. 52 Pa. Code § 37.204 and 67 Pa. Code 229.361. Thus, motor vehicle safety and highway safety are matters of public concern. Plaintiff alleges that he was a manager directly responsible for supervising the defendant's commercial drivers. As noted above, plaintiff's position allegedly dealt directly with safety. To terminate his employment for making complaints regarding safety of the drivers/trucks, would be a violation of Pennsylvania's public policy.[2] Accordingly, the

---

[2]We are unconvinced by the defendant's reliance on McLauglin v. Gastrointestinal Specialists, Inc., 750 A.2d 283 (Pa. 2000). In that case,

defendant's motion to dismiss plaintiff's wrongful discharge claim will be denied.

**Conclusion**

For the reasons set forth above, the defendant's motion to dismiss will be denied. An appropriate order follows.

---

the Pennsylvania Supreme Court held that an employee could not establish a public policy violation, merely because an employee was terminated in violation of the Occupational Safety and Health Act (OSHA). The plaintiff in that case complained to her employer about inappropriate storage of a chemical that caused her to suffer from physical maladies. The court found that plaintiff had merely demonstrated a possible violation of a federal regulation that affected her own personal interest. Id. at 317. The court indicated that its ruling was limited to "*only* whether federal OSHA prohibits retaliatory discharge and whether a Pennsylvania court has jurisdiction to decide a matter arising from *federal* OSHA." Id. at 312 (emphasis in the original). The court indicated that the plaintiff complained only of her own safety, not the safety of the public in general, and that no Pennsylvania statute was at issue. In the instant case, the plaintiff made complaints regarding safety that affected the public in general, and federal regulations involving these safety areas have been incorporated into the Pennsylvania Code.

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD OLIVERI, JR.,** | : | No. 3:09cv921 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **U.S. FOOD SERVICE d/b/a** | : | |
| **NORTH STAR FOODSERVICE,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

    **AND NOW**, to wit, this 9th day of February 2010, the defendant's motion to dismiss (Doc. 9) is hereby **DENIED**.

                                         **BY THE COURT:**

                                         **s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**